## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAMES EDWARD VAN HOUTEN, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 04-3316-MLB |
| | ) | |
| ROGER WERHOLTZ, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**I.  INTRODUCTION**

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254.  The matter has been fully briefed and is ripe for decision.  (Docs. 1 and 22).  The application is DENIED for reasons set forth herein.

On August 16, 2001, petitioner and Thomas LeGrand entered Viola Barrett's home through her back door.  Petitioner searched her home for money while LeGrand and another individual held Barrett in her bedroom.  Petitioner decided to kill Barrett after she saw LeGrand's face.  Petitioner placed a bag over her head for several minutes and attempted to asphyxiate her.  LeGrand broke her neck.  The coroner's report stated that the death occurred by asphyxiation from the bag or due to the break in the neck.  (Br. of Pet'r in State v. VanHouten, No. 02-89336 (Kan. Oct. 2, 2003) (VanHouten I) at 4-5).

On August 20, 2001, the state of Kansas charged petitioner with first-degree premeditated murder, aggravated robbery, aggravated burglary, aggravated battery against a law enforcement officer, three counts of aggravated assault on a law enforcement officer, and felony

fleeing or attempting to elude a police officer.  The state also filed a notice of its intent to pursue a hard 50 sentence against petitioner.  On June 6, 2002, petitioner pleaded guilty to first-degree premeditated murder.  (Br. of Pet'r in <u>VanHouten I</u> at 3).

The following colloquy occurred between the court and petitioner during the plea hearing:

>     THE COURT:    Okay.   Under Kansas law if you are convicted of this offense and sentenced to life imprisonment you are not eligible for parole for 25 years minimum.  You understand that?
>
>     VANHOUTEN:    Yes, sir, your Honor.
>
>     THE COURT:    And apparently the State is also free to file a motion to make that eligibility 50 years rather than 25.  Do you understand that?
>
>     VANHOUTEN:    Yes, sir, your Honor.
>
>     MR. CLARK:    In fact, they have already filed their intent to seek the Hard 50, your Honor, and Mr. VanHouten is aware of that.
>
>     MS. DERFELT:    It was filed at the time of the Complaint.
>
>     THE COURT:    And a hearing on that motion will be taken up at the time of sentencing.  Do you understand that?
>
>     VANHOUTEN:    Yes, sir, your Honor.
>
>     THE COURT:    All right.  Have I stated substantially all the agreement, the entire agreement you have with the State?
>
>     VANHOUTEN:    Yes, sir, your Honor.

(Plea Tr. at 8-9.)

On June 14, 2001, LeGrand pleaded guilty to second-degree murder of Ms. Barrett.  On June 26, 2001, prior to sentencing, petitioner filed a motion to withdraw his guilty plea on the basis that petitioner should be treated similar to his cofelon, LeGrand.  (Br.

-2-

of Pet'r in <u>VanHouten I</u> at 4).   The trial court denied the motion after determining that petitioner failed to present evidence of differential treatment and finding that Petitioner entered his plea knowingly and voluntarily.   (Sentencing Tr. at 14-15; <u>Kansas v. VanHouten</u>, 88 P.3d 241, 2004 WL 875608 *3 (Kan. Jan. 30, 2004)).

During the sentencing hearing, the State presented evidence that the cause of death was homicide by either asphyxiation or as a result of a neck fracture.   Special Agent Adams testified that petitioner stated that he went to Ms. Barrett's home to rob her or to complete some sort of gang initiation.   Petitioner then placed a bag over her face for several minutes.   (Br. of Pet'r. in <u>VanHouten I</u> at 4).

Petitioner declined to present any evidence of mitigating factors during the sentencing hearing.

> DEFENSE COUNSEL: First, your Honor, I would inform the court that we met with Mr. VanHouten during some prior recesses and Mr. VanHouten had indicated to us that he would oppose continuing our part of the sentencing hearing. I explained to him, number one, that meant we would not be able to have Dr. Barnett here personally to testify, although we could offer his psychological evaluation into evidence. In addition, I informed him that that would not allow us to prepare and present any other evidence in mitigation of the sentence to be imposed and would not allow us to prepare a mitigation report. So Mr. VanHouten has explained to us that he understands all that but wants to proceed with sentencing today. I don't know if the court wants to briefly make inquiry of Mr. VanHouten on those issues?
>
> THE COURT:     Is that correct, Mr. VanHouten?
>
> VANHOUTEN:     Yes, sir, your Honor.
>
> THE COURT:     You want to proceed without offering any evidence as to any mitigating factors?
>
> VANHOUTEN:     No, I want to go to DOC [Department of Corrections] ASAP.
>
> THE COURT:     You understand, sir, that under Kansas

law the State's filed a motion to impose what's commonly called the Hard 50.  In other words, you won't be eligible for parole for fifty years.  To impose that this court is required to balance aggravating and mitigating factors. You understand that?

    VANHOUTEN:    Yes, sir, your Honor.

    THE COURT:    You won't be offering any mitigating factors at all.  You understand that?

    VANHOUTEN:    Yes, sir, your Honor.

    THE COURT:    Okay.

(Sentencing Tr. at 56-58).

The court then allowed counsel to present oral argument on the hard 50 motion.  Petitioner argued that the circumstances did not render the murder more heinous, atrocious or cruel and that the killing was not for monetary gain or to avoid arrest.  Petitioner also argued that the circumstances in both his and LeGrand's case were exactly the same.  Petitioner asserted that he was only twenty-two at the time of the crime, he suffered from chronic postraumatic stress disorder, borderline personality disorder, bipolar disorder, intermittent explosive disorder, obsessive thinking, depression, paranoid ideation, and psychotic thoughts.  (Br. of Pet'r in VanHouten I at 6).

The trial court found that three aggravating factors applied to petitioner's crime.  First, petitioner committed the crime for the purpose of receiving money under K.S.A. 21-4636(c).  Second, petitioner committed the crime to avoid prosecution under K.S.A. 21-4636(e).  Finally, petitioner committed the crime in an especially heinous, atrocious or cruel manner under K.S.A. 21-4636(f). (Sentencing Tr. at 81).

-4-

The trial court rejected all four of petitioner's mitigating factors.  The court determined that there was no evidence to suggest that the there was an arbitrary application of plea bargaining.  And the court was not persuaded by the psychological findings since the latest diagnosis was made in 1994 and no evidence supported a finding that petitioner was affected on the night of the murder.  The court also found that age twenty-two was not young enough to be considered a mitigating factor.  Since the aggravating circumstances outweighed the nonexistent mitigating factors, the court imposed a hard 50 sentence.  (Sentencing Tr. at 81-82).

Pursuant to K.S.A. 22-3601, petitioner appealed directly to the Kansas Supreme Court alleging three points of error.  Petitioner argued that the trial court erred in refusing to allow him to withdraw his guilty plea.  The Supreme Court held that the trial court did not err since petitioner had failed to produce any evidence that he and LeGrand were similarly situated. Second, petitioner challenged the trial court's findings of the aggravated factors and imposition of the hard 50 sentence.  The Supreme Court held that petitioner failed to challenge and, therefore, waived the trial court's findings on the mitigating factors and one of the aggravating factors (K.S.A. 2002 Supp. 21-4636(e)).  Accordingly, even if the trial court erred in finding the remaining two aggravating factors, the remaining aggravating factor would outweigh the nonexistent mitigating factors. In the alternative, the Supreme Court held that a rational factfinder could have found the existence of the other two aggravating factors by a preponderance of the evidence. VanHouten I, 2004 WL 875608 **4-5.

-5-

Petitioner also challenged his sentence on the basis that it violated his Sixth and Fourteenth Amendment rights since the aggravating factors were not determined by a jury beyond a reasonable doubt.  The Supreme Court held that petitioner failed to raise this argument at the trial court level and, alternatively, that the court had previously rejected the argument in <u>Kansas v. Washington</u>, 275 Kan. 644, 680, 68 P.3d 134 (2003).  <u>Id.</u> at *5.

## II.  ANALYSIS

Having failed at the Supreme Court of Kansas, petitioner now turns to the federal courts seeking review of his plea and sentence. However, this court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Inherent in that requirement is that a habeas court will only consider alleged violations of <u>federal</u> law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991.  Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts.  <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

A.  Exhaustion of State Remedies

-6-

Where, as here, the state provides an effective means to correct alleged errors in a petitioner's state criminal proceedings, AEDPA requires each petitioner to exhaust those state remedies before bringing a federal habeas petition.  28 U.S.C. § 2254(b)(1).  While there was a time when respondent's failure to raise the exhaustion issue would have constituted a waiver, Demarest v. Price, 130 F.3d 922, 934 (10th Cir. 1997), the AEDPA mandates exhaustion of state remedies unless the respondent expressly waives that requirement.  28 U.S.C. § 2254(b)(3); see also Ellis v. Hargett, 302 F.3d 1182, 1189 (10th Cir. 2002).  Accordingly, the court must determine whether the exhaustion requirements have been met before considering the merits of the application.

Petitioner presents three points of error: 1) trial court's refusal to allow petitioner to withdraw his guilty plea; 2) imposition of a hard 50 sentence without a jury finding and; 3) failure to receive a similar plea bargain as cofelon LeGrand.  In determining whether petitioner presents valid federal claims, the court will liberally construe his pro se filings.  Cummings v. Evans, 161 F.3d 610 (10th Cir. 1998).  On the other hand, petitioner was represented by counsel in all of his state court proceedings; thus, when considering whether he fairly presented his federal claims in the state system, no such liberal construction is warranted.

Petitioner's first and third claim are essentially one claim phrased differently.  Petitioner asserted on appeal that the court erred in refusing to withdraw his guilty plea since the prosecutor failed to treat him similar to LeGrand.  A review of petitioner's brief to the Kansas Supreme Court shows that this alleged error was

argued as a violation due process.  (Br. of Pet'r in <u>VanHouten I</u> at 7.)  Hence, petitioner exhausted his state remedies on this matter and the court will consider the claim on the merits.

Petitioner's second challenge is to the imposition of the hard 50 sentence, claiming in essence that it violated his Sixth Amendment right to have a jury determine factors that expand his sentencing range, as that right was defined in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000).  This claim was also presented to the Kansas Supreme Court for review and, thus, is properly before this court.

B.   Guilty Plea

Petitioner argues that the state's failure to agree to a plea similar to LeGrand's was a violation of its duty of good faith and fair dealing.  Accordingly, he claims that the trial court should have allowed him to withdraw his plea.  Petitioner cites <u>United States v. Ailsworth</u>, 899 F. Supp. 511 (D. Kan. 1995), to support his argument. (Br. of Pet'r in <u>VanHouten I</u> at 7.)  <u>Ailsworth</u>, however, stands for the proposition that the state has a duty to perform in accordance with the agreement it made with a defendant.  Petitioner has not asserted that the state breached his plea agreement.  Petitioner's position, that the failure to offer similar plea agreements to cofelons violates the state's duty, is not supported by <u>Ailsworth</u>.

Moreover, even if petitioner's due process rights would be violated if the state treated similar cofelons differently, petitioner's writ must be denied.  Petitioner wholeheartedly failed to present any evidence that he and LeGrand were similarly situated. (<u>VanHouten I</u>, 2004 WL 875608 *3; Sentencing Tr. at 13, 15.)

Petitioner's application is DENIED on this claim.

C.   Hard 50 Sentence

Kansas law provides that if a defendant is convicted of premeditated first-degree murder, the trial court shall determine whether he be required to serve a mandatory term of imprisonment of 50 years without the eligibility of parole. K.S.A. 21-4635(a). In order to do so, the trial court must make that determination after considering evidence of aggravating and mitigating circumstances. K.S.A. 21-4635(b). If the court finds one or more of the aggravating circumstances to exist and the aggravating circumstances outweigh any potential mitigating circumstances, the defendant shall receive the hard 50 sentence. K.S.A. 21-4635(c).

Petitioner's writ does not challenge the sufficiency of the evidence to support the findings, but he asserts that the findings by the trial court and not by a jury violated his rights in Apprendi and Ring. The rule expressed in Apprendi, 530 U.S. at 466, and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002), requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, to be submitted to a jury, and proved beyond a reasonable doubt. On a prior occasion, this court has agreed with the Kansas Supreme Court's determination that a sentence which provides that a defendant was ineligible for parole for a determinate amount of years does not violate his Sixth Amendment rights since the state trial judge did not increase the maximum sentence. Lessley v. Bruce, 2003 WL 21402580, *5 (D. Kan. 2003).

-9-

Petitioner argues, however, that the concerns underlying Apprendi apply with equal or more force to facts increasing the defendant's minimum sentence. Those factual findings, he contends, often have a greater impact on the defendant than the findings at issue in Apprendi. This is so because when a fact increasing the statutory maximum is found, the judge may still impose a sentence far below that maximum; but when a fact increasing the minimum is found, the judge has no choice but to impose that minimum, even if he or she otherwise would have chosen a lower sentence. Cf. Almendarez-Torres, 523 U.S., at 244-245, 118 S.Ct. 1219. Why, petitioner asks, would fairness not also require the latter sort of fact to be alleged in the indictment and found by the jury under a reasonable-doubt standard? The answer is that because it is beyond dispute that the judge's choice of sentences within the authorized range may be influenced by facts not considered by the jury, a factual finding's practical effect cannot by itself control the constitutional analysis. The Fifth and Sixth Amendments ensure that the defendant "will never get more punishment than he bargained for when he did the crime," but they do not promise that he will receive "anything less" than that. Apprendi, supra, at 498, 120 S.Ct. 2348 (SCALIA, J., concurring).

Harris v. United States, 536 U.S. 545, 565-566, 122 S.Ct. 2406, 2418 -2419 (2002).

The imposition of a hard 50 sentence here does not increase petitioner's life sentence. Instead, it simply limits the lower end of the sentence, which is consistent with Harris.[1]  Petitioner's application is DENIED on this claim.

## III.   CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is DENIED. A motion for reconsideration is neither invited nor encouraged. Any such motion shall not exceed three

---

[1]   Petitioner has not asserted that his sentence is unconstitutional in light of Blakely v. Washington, 124 S.Ct. 2531 (2004). However, since Blakely does not apply retroactively to convictions that were already final at the time the Supreme Court decided Blakely on June 24, 2004, any such argument would be inappropriate here. Therefore, the court has not considered whether Kansas' hard 50 is unconstitutional under Blakely.

double-spaced pages and shall strictly comply with the standards
enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174
(D. Kan. 1992).  The response to any motion for reconsideration shall
not exceed three double-spaced pages.  No reply shall be filed.


     IT IS SO ORDERED.

     Dated this <u>  5th  </u> day of May 2005, at Wichita, Kansas.


<u>s/ Monit Belot</u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-11-